UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
MARK LALIBERTE,                 )
      Plaintiff                 )
                                )
V.                              )   Civil Action
                                )   No. 05-11224-MLW
WOODS HOLE, MARTHA'S            )
VINEYARD AND NANTUCKET          )
STEAMSHIP AUTHORITY,            )
      Defendant                 )
_____)
                                )
BARRY BROOKS,                   )
      Plaintiff                 )
                                )
                                )   Civil Action
V.                              )   No. 05-11861-MLW
                                )
WOODS HOLE, MARTHA'S            )
VINEYARD AND NANTUCKET          )
STEAMSHIP AUTHORITY,            )
      Defendant                 )
_____)

### DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Now comes the defendant, Woods Hole, Martha's

Vineyard & Nantucket Steamship Authority, in the above-

entitled actions, by and through its undersigned

attorneys, and respectfully moves this Honorable Court for

a protective Order pursuant to Fed.R.Civ.P. 26(c).  As

grounds in support, the defendant respectfully submits the

following for the Court's consideration.

On August 4, 2003, the plaintiffs were serving

onboard the M/V ISLANDER, a ferry formerly owned and

operated by the defendant, as Able Bodied Seamen. Shortly after the vessel departed Vineyard Haven, the U.S. Coast Guard requested its Master to perform a man overboard drill. The U.S. Coast Guard was onboard conducting a quarterly inspection. After the M/V ISLANDER lowered its rescue boat into the water, it was boarded by the plaintiffs via the vessel's freight deck. While the plaintiffs were in the process of disconnecting the lines to the rescue boat and starting its engine, the rescue boat capsized.

Both plaintiffs allege post-traumatic stress syndrome as a result of the incident. They contend in Counts I & II of their respective Complaints that their injuries were caused by the defendant's negligence and/or the unseaworthiness of the M/V ISLANDER. Rather than incurring additional costs associated with defending these counts, the defendant recently stipulated to a finding in favor of the plaintiffs on Counts I & II of their Complaints. Accordingly, the only issues to be resolved at the time of trial will be the plaintiffs' contributory negligence, the nature and extent of their damages, and issues relating to their claims for maintenance and cure.

The plaintiffs' recently re-noticed the 30(b)(6) deposition of the defendant. The 30(b)(6) deposition

notice lists thirteen (13) areas of inquiry and also attaches a "Schedule A," which identifies sixteen separate (16) categories of documents.[1]  The defendant is seeking a Protective Order because most of the areas of inquiry listed in the 30(b)(6) deposition notice either relate to liability, which is no longer an issue based upon the stipulation recently filed by the defendant, or are extremely vague, burdensome, and unnecessary.  The defendant submits that it should not be required to produce an individual on the following areas of inquiry:

> 1.    *The existence and present location of any written plans covering man overboard drills and/or lifeboat drills which were present on the vessel and in effect with respect to the M/V ISLANDER at the time of plaintiffs' alleged injuries on August 4, 2003.*
>
> 2.    *Any U.S. Coast Guard disciplinary actions against the defendant, the Master and/or any members of the crew of the M/V ISLANDER arising out of the plaintiffs' alleged incident including without limitation the specific allegations, charges, defenses, admissions and resolution of any such disciplinary actions.*
>
> 4.    *The existence and present location of any documents regarding man overboard or life boat procedures that were in effect with regard to any of defendant's vessels on August 4, 2003.*

**ARGUMENT**

In light of the defendant's recent stipulation, its plans for man overboard drills are completely irrelevant.

---

[1] A copy of the 30(b)(6) deposition notice is attached hereto as Exhibit "A."

The defendant's plans for man overboard drills have no connection to the nature and extent of the plaintiffs' alleged damages, the defendant's contributory negligence defense, or the maintenance and cure claims asserted by the plaintiffs. Notwithstanding, the plaintiffs have deposed the vessel's Master (David Dandridge). During his deposition, plaintiffs' counsel inquired at length concerning the defendant's man overboard procedures on the M/V ISLANDER and its other vessels.

Any U.S. Coast Guard disciplinary actions taken against the defendant and its crewmembers also relate to liability. Nonetheless, the plaintiffs are in possession of the civil citation that the U.S. Coast Guard issued to the defendant as a result of the incident, which the defendant satisfied, and are also in possession of the documents relating to the actions taken by the U.S. Coast Guard against the vessel's Master, Pilot, and Bosun. The defendant should not be required to interrupt its operations and produce its Port Captain, when the plaintiffs are in possession of the very information they seek. The disciplinary actions taken against the defendant and its crewmembers as a result of the incident do not have any bearing on the issues reserved for the time of trial.

The defendant submits that the fourth area of inquiry, which requests documents for vessels other than the M/V ISLANDER, is irrelevant.  This matter involves the M/V ISLANDER, a passenger vessel that provided service between Woods Hole and Martha's Vineyard.  At the time of the incident, the defendant owned and operated several other types of vessels, including four (4) freight vessels and a high speed catamaran providing service between Hyannis and Nantucket.  The aforementioned vessels, including their procedures for man overboard drills, are different than the M/V ISLANDER.[2]  Any information or documentation relating to the defendant's other vessels is irrelevant.

Nevertheless, to the extent that the information sought is relevant, it would only be relevant on the issue of liability which is no longer an issue.

> 3. *Plaintiff Mark LaLiberte's attempts to work for the defendant in a capacity other than as a seaman and the basis upon which the defendant did not hire him.*

**ARGUMENT**

The third area of inquiry is completely irrelevant to the remaining issues in this case.  They have absolutely

---

[2] The M/V ISLANDER is a "double-ended vessel," which means that it has a pilothouse at both the bow and stern.  The defendant's freight vessels are converted oil supply boats and are completely different than the M/V ISLANDER, as is its high-speed catamaran.

no bearing on the plaintiffs' claims for lost wages or loss of future earning capacity, their claims for past, present, and future conscious pain and suffering, the nature and extent of their contributory negligence, or their claims for maintenance and cure benefits.  The defendant should not have to produce its General Manager to respond to an area of inquiry that it completely irrelevant.

> 21.  *Whether the hook which secures the lifeboat to the wire coming from the davit had ever previously failed.*

**ARGUMENT**

This topic has no connection to the remaining issues in this case, to wit, the plaintiffs' alleged damages, the degree of their contributory fault, or maintenance and cure, and relates exclusively to liability.  Additionally, there is no evidence that the hook securing the rescue boat to the wire failed at the time of the incident.  The defendant should not be required to produce its Port Engineer to respond to an area that is completely irrelevant to the remaining issues.

> 21.  *The existence of and present location of the documents identified on the attached Schedule "A".*

**ARGUMENT**

Schedule "A" identifies sixteen (16) categories of

documents, which would require the defendant to produce numerous individuals. The documents identified in Schedule "A" were requested by the plaintiffs in their Requests for Production of Documents. The defendant has responded to their Requests for Production of Documents by either producing the requested documents or objecting to their production.[3] The plaintiffs should not be allowed to circumvent the defendant's objections to their Requests for Production of Documents through a 30(b)(6) deposition notice. If the plaintiffs believe that the defendant's objections are improper, then they should file a Motion to Compel and properly bring the issue before this Honorable Court.

Additionally, it should be noted that the plaintiffs', despite numerous requests, have thus far refused to respond to the defendant's Requests for Production of Documents, which were served on September 1, 2005 and October 11, 2005. The defendant should not be required to produce numerous individuals on its document production while its Requests for Production of Documents remain outstanding. Finally, it should be noted that the

---

[3] The defendant has attached hereto as Exhibit "B" its responses to Mark LaLiberte's Requests for Production of Documents, which are virtually identical to Barry Brooks' Requests for Production of Documents. The defendant has highlighted therein the documents requested in Schedule "A" and its response.

documents identified in Schedule "A" relate primarily to liability.  The plaintiff has not limited the scope of Schedule "A" to the remaining issues in this case.

    22.  *Defendant's Answers to Plaintiff's Interrogatories.*

**ARGUMENT**

Both of the plaintiffs served twenty-four (24) Interrogatories, eight (8) of which consist of numerous subparts.  The defendant would have to produce numerous individuals to cover all of the issues raised in the plaintiff's Interrogatories.[4]  The defendant has responded to the plaintiffs' Interrogatories by either producing the requested information or objecting to its disclosure.[5]  The plaintiffs should not be allowed to circumvent the defendant's objections to their Interrogatories through a 30(b)(6) deposition.  If the plaintiffs believe that the defendant's objections are improper, then they should file a Motion to Compel and properly bring the issue before this Honorable Court.

Finally, it should be noted that a significant amount of the plaintiffs' Interrogatories relate to liability.

---

[4] It would be a tremendous burden on the defendant to respond to the 30(b)(6) deposition notice as drafted.  The plaintiffs should be required to limit the scope of their 30(b)(6) deposition notice to the remaining issues in this case.

[5] The defendant has attached hereto as Exhibits "C" & "D" its answers to the plaintiffs' Interrogatories.

The plaintiff has not identified the specific Interrogatories which they believe relate to the remaining issues in this case.

In conclusion, the only remaining issues are contributory negligence, damages, and maintenance and cure.   The defendant has disclosed the factual basis for its contributory negligence defense and the plaintiffs have deposed the defendant's liability expert. Additionally, the defendant is in the process of compiling information relating to the plaintiffs wages and fringe benefits, which is relevant on the issue of damages.   The defendant intends to produce these documents to the plaintiffs prior to the 30(b)(6) deposition.   The only remaining issue is maintenance and cure and the defendant intends to produce a 30(b)(6) deponent on this issue. There is no need for the defendant to produce any other 30(b)(6) deponents.

**WHEREFORE**, the defendant, Woods Hole, Martha's Vineyard & Nantucket Steamship Authority, prays that this Honorable Court issue a Protective Order on the aforementioned areas of inquiry listed in the 30(b)(6) deposition notice.

By its Attorneys,

**CLINTON & MUZYKA, P.C.**


"/s/ Thomas J. Muzyka"
Thomas J. Muzyka
BBO NO.  365540
Kenneth M. Chiarello
BBO NO: 639274
One Washington Mall
Suite 1400
Boston, MA  02108
(617) 723-9165

UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY BROOKS, )<br>Plaintiff )<br> )<br>V. )<br> )<br>WOODS HOLE, MARTHA'S )<br>VINEYARD AND NANTUCKET )<br>STEAMSHIP AUTHORITY, )<br>Defendant ) | Civil Action<br><br>No. 05-11861-MLW |
| MARK LALIBERTE, )<br>Plaintiff )<br> )<br>V. )<br> )<br>WOODS HOLE, MARTHA'S )<br>VINEYARD AND NANTUCKET )<br>STEAMSHIP AUTHORITY, )<br>Defendant ) | Civil Action<br><br>No. 05-11224-MLW |

PLAINTIFF'S 4th RE-NOTICE OF DEPOSITION OF THE DEFENDANT
PURSUANT TO F.R.Civ.P. 30(b)(6)

Please take notice that at **10:00, am, on Thursday, August 2, 2007**, at the offices of **Latti & Anderson, LLP, 30-31 Union Wharf, Boston, MA 02109**, the Plaintiff in the above captioned matter, pursuant to F.R.Civ.P. 30(b)(6), will take the deposition upon oral examination of the Defendant, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, before Robert H. Lange & Co., Court reporters in and for the Commonwealth of Massachusetts or before some other officer authorized by law to administer oaths.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Defendant is requested to designate on or more persons to testify on its behalf regarding the following subjects:

1.      The existence and present location of any written plans covering man overboard drills and/or lifeboat drills which where present on the vessel and in effect with respect to the M/V ISLANDER at the time of the Plaintiffs' alleged injuries on August 4, 2003.

2.      Any US Coast Guard disciplinary actions against the Defendant, the master and/or any members of the crew of the M/V ISLANDER arising out of the Plaintiffs' alleged incident including without limitation the specific allegations, charges, defenses, admissions and resolution of any such disciplinary actions.

3.      Plaintiff Mark LaLiberte's attempts to work for the Defendant in a capacity other than as a seaman and the basis upon which the Defendant did not hire him.

4.      The existence and present location of any documents regarding man overboard or life boat procedures that were in effect with regard to any of Defendants vessel on August 4, 2003.

6.      The factual basis for Defendants claim that Plaintiff Barry Brooks was contributorily negligent.

7.      The factual basis of Defendants claim that Plaintiff Mark Laliberte was contributorily negligent.

10.      The factual basis for Defendants denial and/or termination of Maintenance and Cure benefits to Plaintiff Barry Brooks.

11.      The factual basis for Defendants denial and/or termination of Maintenance and Cure benefits to Plaintiff Mark LaLiberte.

13.      The current pay rate for seaman employed by the Defendant including the cost of benefits paid by the Defendant for the benefit of the seaman employees.

21.      Whether the hook which secures the lifeboat to the wire coming from the davit had ever previously failed.

22.      Why the hook which secures the lifeboat to the wire coming from the davit was tied shut with line.

21.      The existence of and present location of the documents identified on the attached Schedule "A"

22.      Defendant's Answers to Plaintiffs interrogatories.

2

The deponent is requested to bring with him for examination and copying the documents on the attached Schedule "A".

You are invited to attend and cross-examine.

Respectfully submitted,
Barry Brooks, Plaintiff,
By his attorneys,

David F. Anderson
BBO #560994
Carolyn M. Latti
BBO #567394
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000

Dated: 07-25-07

3

SCHEDULE "A"
Re-noticed 30(b)(6) deposition of Defendant
Woods Hole, Martha's Vineyard and Nantucket Steamship Authority
August 2, 2007

1.    <u>Log Entries and Accident Reports</u>
        All log entries, captain's reports, crew member reports, accident reports, injury reports, or any other communication, written report or statement concerning the alleged incident, and/or the Plaintiff's alleged injuries <u>other than</u> communications and reports made to the Defendant's, insurer, adjuster and/or attorneys.

2.    <u>Statements of the Defendant</u>
        All recorded communications, written reports and statements, which where written by, taken from, or given by the Defendant and/or any agents, servants or employees of the Defendant, concerning the Plaintiff's alleged incident, <u>other than</u> communications made to the Defendant's insurers, adjusters or attorneys.

5.    <u>Statements & Reports Made to a Government Agency</u>
        All reports and/or documents (including without limitation U.S.C.G. "First Report of Marine Accident Injury or Death") provided by any person to any government or government agency regarding the Plaintiff's alleged incident.

6.    <u>Government Reports</u>
        All reports and/or documents (including without limitation U.S.C.G. reports) prepared by any government or government agency regarding Plaintiff's alleged incident.

7.    <u>Ship's Logs</u>
        All ships logs, engineering logs, and/or captain's logs relating to the Defendant's vessel for the date of the alleged incident.

15.    <u>Fresh Photographs of Scene of Incident</u>
        Any and all photographs of the location of the Plaintiff's alleged incident that where taken within thirty days of the alleged incident.

42.    Any and all Manuals and/or handbooks on the M/V ISLANDER.

43.    Any and all documents regarding orders and/or standing orders at the time for the day of the alleged incident.

46.    Any and all documents regarding complaints, reprimands, suspensions of the Captain Dandridge.

48.    Any and all documents regarding man overboard drills.

49.    Any and all documents regarding life boat drills.

52.   Any and all documents regarding drills to be performed and/or performed on August 4, 2003.

54.   Any and all documents regarding any benefits the Plaintiff received as a result of his employment with the Defendant.

55.   Plaintiff's wage records from the date of hire to the present.

60.   Near miss report prepared by Captain Gregory Gifford.

62.   Any and all documents regarding rescue procedures on the M/V ISLANDER at time of the alleged incident.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK LALIBERTE,                          CIVIL ACTION
        Plaintiff,                       NO: 05-11224-MLW

VS.

WOODS HOLE, MARTHA'S VINEYARD
AND NANTUCKET STEAMSHIP
AUTHORITY,
        Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

Now comes the defendant, in the above-entitled action,

by and through its undersigned counsel, Clinton & Muzyka,

P.C., and hereby submits its Response to Plaintiff's

Request for Production of Documents.

### GENERAL OBJECTION

The defendant objects to all of the plaintiff's

Requests insofar as they seek discovery of matters which

constitute privileged communications or materials prepared

in anticipation of litigation or trial.  By furnishing a

response to any request, the defendant does not waive any

of its general or specific objections to that or any other

Request.  The defendant further objects because the

plaintiff's Requests exceed the amount allowed under the

2

Local Rules for the U.S. District Court for the District of

Massachusetts, and the Federal Rules of Civil Procedure.

**REQUEST 1:**

Log Entries and Accident Reports

All log entries, captain's reports, crew member
reports, accident reports, injury reports, or any
other communication, written report or statement
concerning the alleged incident, and/or the
Plaintiff's alleged injuries other than communications
and reports made to the Defendant's insurer, adjuster
and/or attorneys.

**RESPONSE 1:**

The defendant objects to Request No. 1 in that it
seeks documents protected by the Self Critical
Analysis privilege and documents prepared or obtained
in anticipation of litigation. Without waiving its
objection, the defendant in its Automatic Disclosure
has produced a copy of the vessel's Deck Log for the
date of the incident and a copy of the Report of
Personal Injury relating to the plaintiff.
The defendant has attached hereto as Exhibit "A" (Bate
Nos. 144-145) a copy of the vessel's Drill Log from
June 5, 2003 through August 5, 2003.

**REQUEST 2:**

Statements of the Defendant

All recorded communications, written reports and
statements, which were written by, taken from or given
by the Defendant and/or any agents, servants or
employees of the Defendant, concerning the Plaintiff's
alleged incident, other than communications made to
the Defendant's insurers, adjusters or attorneys.

**RESPONSE 2:**

The defendant objects to Request No. 2 in that it
seeks documents prepared or obtained in anticipation
of litigation. Without waiving its objection, the
defendant has within its possession statements from

William Munson, Michael Kuhn, Steven Bonoli, Ellen
Ferguson, Frank Kincaid, John Mendes, John Lobo, Roy
Smith, Thomas Henrique and Bernard Holzer.

**REQUEST 3:**

Statements of the Plaintiff

All statements, recorded communications, tape
recordings, written statements (whether signed or
unsigned) or memoranda of statements made by the
Plaintiff to anyone concerning:  1) the alleged
incident; 2) the Plaintiff's alleged injuries; and/or
3) the Plaintiff's alleged damages.

**RESPONSE 3:**

The defendant objects to Request No. 3 in that it
seeks documents obtained in anticipation of
litigation.  Without waiving its objection, the
defendant does not have any written statements from
the plaintiff at the present time.

**REQUEST 4:**

Witness Statements

All recorded communications, transcriptions of
recorded communications written reports, statements,
and memoranda of statements, which were written by,
provided by or taken from, any witnesses to the
alleged incident or by any person having knowledge of
the alleged incident.

**RESPONSE 4:**

The defendant objects to Request No. 4 in that it
seeks documents prepared or obtained in anticipation
of litigation.  Without waiving its objection, the
defendant has within its possession statements from
Farley Doucette, Michael Armstrong, and Douglas
Ulwick.

**REQUEST 5:**

Statement & Reports Made to a Government Agency

All reports and/or documents (including without limitation U.S.C.G. "First Report of marine Accident Injury or Death) provided by any person to any government or government agency regarding the Plaintiff's alleged incident.

**RESPONSE 5:**

The defendant has produced a copy of the Report of Marine Accident, Injury or Death (U.S. Coast Guard Form 2692) in its Automatic Disclosure. The defendant does not have any other reports concerning this incident that were submitted to a government agency.

**REQUEST 6:**

Government Reports

All reports and/or documents (including without limitation U.S.C.G. reports) prepared by any person to any government agency regarding Plaintiff's alleged incident.

**RESPONSE 6:**

The defendant has within its possession the U.S. Coast Guard's Report of Investigation into the Circumstances Surrounding the Incident Involving ISLANDER - RESCUE BOAT CAPSIZED/PERSONAL INJURY on 08/04/03. The defendant objects to the production of this report in that it was obtained in anticipation of litigation and is also equally available to plaintiff's counsel.

**REQUEST 7:**

Ship's Logs

All ships logs, engineering logs, and/or captain's logs relating to the Defendant's vessel for the time period beginning third days prior to the date of the alleged incident and extend thirty days after the date of the alleged incident.

**RESPONSE 7:**

The defendant objects to Request No. 7 in that it is
unduly burdensome and seeks documents not likely to
lead to the discovery of admissible evidence.

**REQUEST 8:**

Title to Vessel

All certificates of title and/or abstracts of title
concerning or relating to the vessel named in
Plaintiff's Complaint.

**RESPONSE 8:**

In its Answer to Plaintiff's Complaint and Demand for
Jury Trial, the defendant admits that it owned and
operated the M/V ISLANDER at the time of the incident.
As such, the defendant objects to Request No. 8 in
that it seeks documents not likely to lead to the
discovery of admissible evidence.

**REQUEST 9:**

Repair/Alteration Records of vessel.

All documents (including without limitation, repair
orders, work orders, invoices, receipts, bills, and
captains' "to do" lists) concerning maintenance (other
than routine maintenance procedures performed on the
vessel each and every trip), repairs, alterations,
modifications and or subsequent remedial measures
performed on, or to, the vessel, her equipment and
appurtenances, during period of time beginning two (2)
years prior to the alleged incident and extending one
(1) year following the alleged incident.

**RESPONSE 9:**

The defendant objects to Request No. 9 in that it is
overly broad, vague, unduly burdensome, and seeks
documents not likely to lead to the discovery of
admissible evidence.

**REQUEST 10:**

Vessel Plans and Specifications

All ships drawings, and general arrangement plans,
blueprints and specifications concerning the vessel
named in Plaintiff's Complaint.

**RESPONSE 10:**

The defendant objects to Request No. 10 in that it is
overly broad, vague, unduly burdensome, and seeks
documents not likely to lead to the discovery of
admissible evidence.

**REQUEST 11:**

Survey Reports

All inspection and survey reports, (including
recommendations and photographs) concerning any
inspection of the vessel and/or survey performed on
the vessel within the five (5) year period preceding
the date of the alleged incident.

**RESPONSE 11:**

The defendant objects to Request No. 11 in that it is
overly broad, vague, unduly burdensome, and seeks
documents not likely to lead to the discovery of
admissible evidence.

**REQUEST 12:**

Surveyor's Notes

All surveyors notes, checklists, memoranda, drawings,
sketches, and/or other contemporaneous recordings of
information by individuals performing an inspection
and/or survey of the vessel during the time period
beginning five (5) years prior to the date of the
alleged incident and extending through the date of the
trial.

**RESPONSE 12:**

The defendant objects to Request No. 12 in that it is
overly broad, vague, unduly burdensome, and seeks
documents not likely to lead to the discovery of
admissible evidence.

**REQUEST 13:**

Pre-Incident Photo's and Video of Vessel.

All photographs and video tapes depicting the
Defendant's vessel that were taken during the taken
during the five years prior to the date of the alleged
incident.

**RESPONSE 13:**

The defendant objects to Request No. 13 in that it is
overly broad, vague, unduly burdensome, and not likely
to lead to the discovery of admissible evidence.

**REQUEST 14:**

Post-Incident Photo's and Video of Vessel

All photographs and video tapes depicting the
Defendant's vessel taken after the alleged incident up
to the date of trial.

**RESPONSE 14:**

The defendant objects to Request No. 14 in that it is
overly broad, vague, unduly burdensome, and not likely
to lead to the discovery of admissible evidence.

**REQUEST 15:**

Fresh Photographs of Scene of Incident

Any and all photographs of the location of the
Plaintiff's alleged incident that were taken within
thirty days of the alleged incident.

**RESPONSE 15:**

The defendant has within its possession several photographs obtained from the U.S. Coast Guard. The defendant objects to there production and submits that these photographs are equally available to the plaintiff from the U.S Coast Guard.

**REQUEST 16:**

Survey Photographs

All photographic prints or negative depicting the Defendant's vessel, that were taken during the course of an inspection or survey performed during the time period beginning five (5) years prior to the date of the alleged incident and extending through the date of the trial.

**RESPONSE 16:**

The defendant objects to Request No. 16 in that it is overly broad, vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence.

**REQUEST 17:**

Photographs of the Plaintiff

All photographs depicting the Plaintiff.

**RESPONSE 17:**

The defendant objects to Request No. 17 in that it seeks documents obtained in anticipation of litigation, or protected by the attorney work-product doctrine.

**REQUEST 18:**

Video of Plaintiff

All video tapes depicting of the Plaintiff.

**RESPONSE 18:**

The defendant objects to Request No. 18 in that it seeks documents obtained in anticipation of litigation, or protected by the attorney work-product doctrine.

**REQUEST NO. 19:**

Video Recordings

Any and all video tapes and/or recordings of the M/V ISLANDER for the date of the alleged incident.

**RESPONSE NO. 19:**

The defendant has none.

**REQUEST 20:**

Any and all video recordings, pictures of the alleged incident.

**RESPONSE NO. 20:**

The defendant has within its possession several photographs obtained from the U.S. Coast Guard. The defendant objects to there production and submits that these photographs are equally available to the plaintiff from the U.S Coast Guard.

**REQUEST NO. 21:**

Documents Obtain through Authorizations

All documents obtained by the Defendant (including the Defendant's agents, insurers, adjusters and attorneys) through the use of medical record authorizations, I.R.S. authorizations, employment record authorizations, or any other authorization signed by the Plaintiff and/or provided by the Plaintiff.

**RESPONSE 21:**

Please see the medical records attached hereto as Exhibit "B."   (Bate Nos. 146-183).

**REQUEST 22:**

Medicals relied upon for Maintenance & Cure
Determination

All medical records and or reports which the Defendant
reviewed and/or relied as the basis it's determination
of the Plaintiff's eligibility for maintenance and/or
cure benefits.

**RESPONSE 22:**

Please see the medical records attached hereto as
Exhibit "B."  (Bate Nos. 146-183).

**REQUEST 23:**

Maintenance Records

All cancelled checks and/or accounting records
concerning the payment by the Defendant or maintenance
benefits to the Plaintiff.

**RESPONSE 23:**

Please see the canceled checks attached hereto as
Exhibit "C."  (Bate Nos. 184-193).

**REQUEST 24:**

Cure Records

All cancelled checks and/or accounting records
concerning the payment by the Defendant of cure
benefits to the Plaintiff or the Plaintiff's medical
providers.

**RESPONSE 24:**

Please see the canceled checks attached hereto as
Exhibit "D."  (Bate Nos. 194-199).

**REQUEST 25:**

X-rays & MRI's

All X-ray films, MRI films and/or other diagnostic medical tests results, in the possession, custody or control of the Defendant, concerning, or relating in any way, to the alleged incident and/or to Plaintiff's alleged injuries and damages.

**RESPONSE 25:**

The defendant has none.

**REQUEST 26:**

Weather Documents

All documents, reports and data compilations concerning the weather, sea state, or meteorological conditions in area of the Defendant's vessel for the time period beginning one week prior to the date of the alleged incident until one week after the alleged incident.

**RESPONSE 26:**

The defendant objects to Request No. 26 in that it is unduly burdensome, seeks documents not likely to lead to the discovery of admissible evidence, and seeks documents equally available to the plaintiff.

**REQUEST 27:**

Vessel Communication Records

All bills, records and/or documents of any type, concerning, or relating to, cellular telephone communications, ship to shore communications, and/or any other electronic communications, operated on the vessel, during the time period beginning two months prior to the date of the alleged incident and ending one month after the date of the alleged incident.

**RESPONSE 27:**

The defendant objects to Request No. 27 in that it is overly broad, vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence.

**REQUEST 28:**

Exhibits & Chalks

All exhibits and chalks the Defendant intends to introduce or use at trial.

**RESPONSE 28:**

The defendant has not made a determination concerning the exhibits and chalks it intends to use or offer at trial. The defendant will supplement this response in accordance with the Pre-Trial disclosure requirements set forth in the Federal Rules of Civil Procedure.

**REQUEST 29:**

Documents Relied Upon for Defendant's Affirmative Defense(s)

All documents that Defendant specifically relies upon as a basis of any affirmative defense.

**RESPONSE 29:**

The defendant objects to Interrogatory No. 11 in that it is overly broad, vague, unduly burdensome, and seeks the disclosure of the mental impressions, conclusions, opinions and legal theories of defense counsel.

**REQUEST 30:**

Expert Documents

All documents identified by the Defendant in response to Plaintiff's interrogatory number 16.

**RESPONSE 30:**

> The defendant objects to Interrogatory No. 30 in that it seeks documents beyond the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure. Without waiving its objection, the defendant has not made a determination concerning the experts it intends to call at trial. If the defendant intends to call an expert witness, then it will supplement this response, but will only produce the documents required under the Federal Rules of Civil Procedure.

**REQUEST 31:**

> I.M.E. Documents
>
> All reports, memoranda, notes, measurements, x-rays, MRI's and/or diagnostic tests results, concerning the Plaintiff, which were written, produced, or performed by any health care professional retained by the Defendant to examine the Plaintiff.

**RESPONSE 31:**

> In its Automatic Disclosure the defendant has produced a copy of the Psychiatric Evaluation of the plaintiff performed by Dr. Ronald Schouten.

**REQUEST 32:**

> Expert Reports & Notes
>
> All written reports, memoranda, drawings, measurements, and test results, concerning the alleged incident and/or Plaintiff's alleged injuries & damages, which were prepared, written or produced by any expert witnesses the Defendant intends to call as a witness at trial.

**RESPONSE 32:**

> The defendant objects to Interrogatory No. 32 in that it seeks documents beyond the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure. Without waiving its objection, the defendant has not made a determination concerning the

experts it intends to call at trial. If the defendant
intends to call an expert witness, then it will
supplement this response but will only produce the
documents required under the Federal Rules of Civil
Procedure.

**REQUEST 33:**

Expert Resume

The resume and curriculum vitae of each expert witness
that the Defendant intends to call at trial.

**RESPONSE 33:**

The defendant objects to Interrogatory No. 33 in that
it seeks documents beyond the scope of permissible
discovery under Rule 26 of the Federal Rules of Civil
Procedure. Without waiving its objection, the
defendant has not made a determination concerning the
experts it intends to call at trial. If the defendant
intends to call an expert witness, then it will
supplement this response but will only produce the
documents required under the Federal Rules of Civil
Procedure.

**REQUEST 34:**

Documents Reviewed by Expert

All documents concerning Plaintiff's alleged incident
and Plaintiff's alleged injuries and damages which
have been reviewed by an expert witness which the
Defendant intends to call as a witness at trial.

**RESPONSE 34:**

The defendant objects to Interrogatory No. 34 in that
it seeks documents beyond the scope of permissible
discovery under Rule 26 of the Federal Rules of Civil
Procedure. Without waiving its objection, the
defendant has not made a determination concerning the
experts it intends to call at trial. If the defendant
intends to call an expert witness, then it will
supplement this response but will only produce the
documents required under the Federal Rules of Civil
Procedure.

**REQUEST 35:**

Documents Relied Upon by Expert

All documents that will be relied upon in forming the
opinion of any expert the Defendant intends to call as
a witness at trial.

**RESPONSE 35:**

The defendant objects to Interrogatory No. 35 in that
it seeks documents beyond the scope of permissible
discovery under Rule 26 of the Federal Rules of Civil
Procedure.  Without waiving its objection, the
defendant has not made a determination concerning the
experts it intends to call at trial.  If the defendant
intends to call an expert witness, then it will
supplement this response but will only produce the
documents required under the Federal Rules of Civil
Procedure.

**REQUEST 36:**

Documents Evincing Facts Relied Upon by Expert

All documents concerning or evincing any fact which
will be relied upon by any expert witness the
Defendant intends to call at trial, when forming his
opinion(s).

**RESPONSE 36:**

The defendant objects to Interrogatory No. 36 in that
it seeks documents beyond the scope of permissible
discovery under Rule 26 of the Federal Rules of Civil
Procedure.  Without waiving its objection, the
defendant has not made a determination concerning the
experts it intends to call at trial.  If the defendant
intends to call an expert witness, then it will
supplement this response but will only produce the
documents required under the Federal Rules of Civil
Procedure.

**REQUEST 37:**

Agreements of Insurance

All insurance agreements, indemnity agreements, and protection and indemnity agreements (P&I policies), under which any person may be liable to satisfy part or all of a judgment which may be entered in the above captioned Civil Action.

**RESPONSE 37:**

The defendant's vessel is insured with International Marine Underwriters, a Member of OneBeacon America Insurance Company. The defendant has requested a copy of its policy and will produce it upon receipt.

**REQUEST 38:**

Excess or Re-Insurance Agreements

All policies or agreements concerning re-insurance and/or excess insurance under which any person, may be liable to make payments or indemnify any other person, as a result of claims asserted in the above captioned Civil Action or as the result of a Judgment entered in the above captioned Civil Action.

**RESPONSE 38:**

The defendant has none.

**REQUEST 39:**

Indemnity Agreements

All agreements and/or treaties under which any person may be liable to make payments or indemnify any person, as a result of claims asserted in the above captioned Civil Action, and/or a Judgment entered in the above Civil Action.

**RESPONSE 39:**

The defendant has none.

**REQUEST 40:**

Vessel Valuation Documents

If the Defendant claims that it is entitled to limit
its liability pursuant to 46 U.S.C. § 183, then please
produce:

a.   all hull insurance, and/or property damage
     insurance policies, providing insurance and/or
     indemnity for property damage to the
     Defendant-Vessel, in effect at the time the
     alleged incident;

b.   all applications for hull insurance policies
     and/or property damage insurance policies,
     concerning the vessel, that were completed by the
     Defendant during the two years preceding the
     alleged incident.

c.   all appraisal reports, and/or value surveys
     concerning the vessel, prepared within the five
     years prior to the date of the alleged incident
     up to the date of trial.

d.   all applications for loans and/or financing
     agreements, for which the Defendant's vessel was
     offered as collateral to secure payment of said
     loan or finance agreement, which were prepared or
     submitted within the five years prior to the
     alleged incident up to the date of trial.

e.   Any documents the Defendant claims is evidence of
     the value of the vessel at the conclusion of the
     voyage.

**RESPONSE 40:**

In respect to subparts (a) through (e), the defendant,
at this time, does not intend to claim limitation of
liability as a defense.  The defendant will supplement
this response if limitation of liability becomes an
issue as discovery progresses.

REQUEST 41:

Charter Agreements

Any and all charter agreements or lease agreements relating to the vessel named in Plaintiff's Complaint which was in effect at the time of the Plaintiff's alleged incident.

RESPONSE 41:

The defendant has none.

REQUEST 42:

Any and all Manuals and/or handbooks on the M/V ISLANDER.

RESPONSE 42:

The defendant objects to Request No. 42 in that it is overly broad and vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence.

REQUEST NO. 43:

Any and all documents regarding orders and/or standing orders at the time for the day of the alleged incident.

RESPONSE NO. 43:

The defendant objects to Request No. 43 in that it is overly broad and vague, and does not define the phrase "standing orders." Without waiving its objection, there were no "standing orders" concerning the man-overboard drill.

REQUEST 44:

Any and all documents regarding drug and alcohol testing performed on the crew members as a result of the Plaintiff's alleged incident.

**RESPONSE 44:**

> The defendant objects to Request No. 44 in that it
> seeks documents protected by the HIPPA regulations.
> The defendant cannot release these records without the
> specific consent of the tested crewmembers.

**REQUEST 45:**

> Employee/personnel file of Plaintiff.

**RESPONSE 45:**

> The defendant has produced a copy of the plaintiff's
> personnel file in its Automatic Disclosure.

**REQUEST 46:**

> Any and all documents regarding complaints,
> reprimands, suspensions of the Captain Dandridge.

**RESPONSE 46:**

> The defendant objects to Request No. 46 in that the
> documents sought therein are equally available to the
> plaintiff from the U.S. Coast Guard.

**REQUEST 47:**

> Any and all documents regarding safety drills.

**RESPONSE 47:**

> The defendant objects to Request No. 47 in that it is
> overly broad, vague, unduly burdensome, and not likely
> to lead to the discovery of admissible evidence.

**REQUEST 48:**

> Any and all documents regarding man overboard drills.

**RESPONSE 48:**

> The defendant objects to Request No. 48 in that it is
> overly broad, vague, unduly burdensome, and not likely
> to lead to the discovery of admissible evidence.
> Without waiving its objection, the defendant has

Exhibit "A" a copy of the vessel's Drill Log from June 5, 2003 through August 5, 2003.

**REQUEST NO. 53:**

Any and all documents regarding inspections, reports of safety and/or audit safety reports on the M/V ISLANDER from three years prior to the accident to present.

**RESPONSE NO. 53:**

The defendant objects to Request No. 53 in that it is overly broad, vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence.

**REQUEST 54:**

Any and all documents regarding any benefits the Plaintiff received as a result of his employment with the Defendant.

**RESPONSE 54:**

The defendant objects to Request No. 54 in that it is overly broad, vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence. The defendant further objects in that the requested documents are equally available to the plaintiff through his union.

**REQUEST 55:**

Plaintiff's wage records from date of hire to the present.

**RESPONSE 55:**

The defendant objects to Request No. 55 in that it requests documents not likely to lead to the discovery of admissible evidence, and further objects in that the requested documents are equally available to the plaintiff.

attached hereto as Exhibit "E" (Bate Nos. 200-215) a
copy of the vessel's Rescue Tactics and Rescue Boat
Launching & Recovery procedures.

**REQUEST 49:**

Any and all documents regarding life boat drills.

**RESPONSE 49:**

The defendant objects to Request No. 48 in that it is
overly broad, vague, unduly burdensome, and not likely
to lead to the discovery of admissible evidence.

**REQUEST 50:**

Any and all documents regarding training of crew
members.

**RESPONSE 50:**

The defendant objects to Request No. 50 in that it is
overly broad and vague, and seeks documents not likely
to lead to the discovery of admissible evidence.

**REQUEST 51:**

Any and all documents regarding Coast Guard's presence
on M/V ISLANDER on August 4, 2003.

**RESPONSE 51:**

The defendant objects to Request No. 51 in that it is
overly broad and vague. The defendant further objects
in that the requested documents are equally available
to the plaintiff through the U.S. Coast Guard.

**REQUEST 52:**

Any and all documents regarding drills to be performed
and/or performed on August 4, 2003.

**RESPONSE 52:**

The defendant objects to Request No. 52 in that it is
overly broad and vague. Without waiving its
objection, the defendant has attached hereto as

## REQUEST 56:

Collective bargaining agreement between Woods Hole, Martha's Vineyard and Nantucket Steamship Authority and Plaintiff's union in effect at the time of the alleged incident.

## RESPONSE 56:

The defendant objects to Request No. 56 in that it requests documents not likely to lead to the discovery of admissible evidence. The defendant further objects in that the documents requested are equally available to the plaintiff.

## REQUEST 57:

Crew list on the M/V ISLANDER the time of the Plaintiff's alleged incident.

## RESPONSE 57:

The defendant produced a copy of its Daily Report of Crew Members on Watch in its Automatic Disclosure.

## REQUEST NO. 58:

Any and all documents regarding the Plaintiff's accident.

## RESPONSE NO. 58:

The defendant objects to Request No. 58 in that it is overly broad and vague.

## REQUEST 59:

Any and all documents regarding passengers onboard the M/V ISALNDER on the date of the alleged incident.

## RESPONSE NO. 59:

The defendant objects to Request No. 59 in that it is overly broad and vague. Without waiving its objection, the defendant does not maintain passenger lists.

REQUEST 60:

Near miss report prepared by Captain Gregory Gifford.

RESPONSE 60:

The defendant objects to Request No. 60 in that it seeks documents protected by the Self-Critical Analysis privilege and prepared in anticipation of litigation.

REQUEST 61:

Any and all documents regarding the Coast Guard quarterly passenger vessel inspection on the M/V ISLANDER from 2 years prior to the alleged incident to the present.

RESPONSE 61:

The defendant has attached hereto as Exhibit "A" a copy of the vessel's Drill Log from June 5, 2003 through August 5, 2003. The defendant is in the process of obtaining a copy of the vessel's Drill Log from August 4, 2001 through June 4, 2003, and will produce these documents upon receipt. Other than the vessel's Drill Log, the defendant does not have any documents responsive to Request No. 61.

REQUEST 62:

Any and all documents regarding rescue procedures on the M/V ISLANDER at the time of the alleged incident.

RESPONSE 62:

The defendant has attached hereto as Exhibit "E" (Bate Nos. 200-215) a copy of the vessel's Rescue Tactics and Rescue Boat Launching & Recovery procedures.

24

By its attorneys,

CLINTON & MUZYKA, P.C.

Thomas J. Muzyka
BBO NO:    365540
Kenneth M. Chiarello
BBO NO: 639274
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above
document was served upon the attorney of record
for each party by hand, mail, overnight mail,
facsimile, on

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK LALIBERTE,                          CIVIL ACTION
        Plaintiff,                       NO: 05-11224-MLW

vs.

WOODS HOLE, MARTHA'S VINEYARD
AND NANTUCKET STEAMSHIP
AUTHORITY,
        Defendant.

## DEFENDANT'S ANSWERS TO PLAINTIFF'S INTERROGATORIES

Now comes the defendant, Woods Hole, Martha's
Vineyard & Nantucket Steamship Authority, in the above-
entitled action, by and through its undersigned counsel,
Clinton & Muzyka, P.C., and submits herewith its Answers
to Plaintiff's Interrogatories as follows:

## GENERAL OBJECTION

The defendant objects to all of the plaintiff's
Interrogatories insofar as they seek discovery of matters
which constitute privileged communications or materials
prepared in the anticipation of litigation or trial.  By
furnishing an answer to any Interrogatory, the defendant
does not waive any of its general or specific objections
to that or any other Interrogatory.  The defendant further
objects because the plaintiff's Interrogatories, including

their subparts, exceed the amount allowed under the Local

Rules for the U.S. District Court for the District of

Massachusetts, and the Federal Rules of Civil Procedure.

**INTERROGATORIES**

Q.1.      Please respond to the applicable question below:

       a.   If the Defendant is a natural person,
           please state the Defendants full name,
           residential address and business address.

       b.   If the Defendant is a publicly traded
           corporation, please state the exact
           corporate name, the state of incorporation,
           the Defendant corporation's address; and
           identify all officers, directors and any
           parent or subsidiary corporations.

       c.   If the Defendant is a privately held
           corporation which is not publicly traded,
           please state the exact corporate name, the
           state of incorporation, the Defendant
           corporation's address; and identify all
           officers, directors, and shareholders of
           the Defendant corporation and any parent or
           subsidiary corporations.

       d.   If the Defendant is a partnership
           (including limited partnerships and limited
           liability partnerships), please state the
           exact partnership name, the business
           address of the partnership and the full
           name and residential address of each
           partner.

       e.   If the Defendant is not a natural person, a
           corporation or a partnership, please
           describe the type of entity the Defendant
           is, and identify all executive officers of
           the Defendant's organization.

A.1.      Subparts (a) through (d) are not applicable.  In
          response to subpart (e), the defendant is a body
          politic.  The defendant objects to the remaining

3

information sought in subpart (e) because it is
not likely to lead to the discovery of
admissible evidence.

Q.2.    With respect to the vessels named in the
        Plaintiff's Complaint, please identify, as of
        the date of the alleged incident:

        a.    the owner of said vessel;

        b.    the operator of said vessel;

        c.    the controller of said vessel;

        d.    the charterer (if any) of said vessel.

A.2.    In respect to subparts (a) through (d), the
        defendant owned, operated, and controlled the
        M/V ISLANDER on the day of the incident.  The
        vessel was not chartered at that time.

Q.3.    Based upon information the Defendant has
        acquired either directly or through
        communications with its agents, employees,
        investigators, adjusters, legal representative,
        the Plaintiff, and/or any other person, please
        describe in detail the Defendant's understanding
        of how the alleged incident occurred, setting
        forth the date, location, time, weather
        conditions, sequence of events, and the cause
        (or causes) of said incident.

A.3.    The defendant objects to Interrogatory No. 3 in
        that it is overly broad, unduly burdensome, and
        seeks information obtained in anticipation of
        litigation or protected by the attorney work-
        product doctrine.  Without waiving its
        objection, the defendant responds that during a
        U.S. Coast Guard man-overboard drill the rescue
        boat that the plaintiff was in capsized causing
        him to fall into the water.  The vessel was in
        Vineyard Haven Harbor at the time of the
        incident, which occurred at approximately 0945
        hours on August 4, 2003.  The weather conditions
        were seasonal.  The defendant is still
        investigating the incident and the cause of the

incident.  This is an issue to be determined by
the fact-finder.

Q.4.    Identify all log entries, Coast Guard reports,
accident reports, injury reports, captain's
reports, reports of crew members, investigative
reports or any other communications, writings or
reports concerning the alleged incident, stating
for each, whether said report or writing was
prepared in anticipation of litigation as
defined by Fed.R.Civ.P.26(B)(3).  In responding
to this interrogatory please use the definition
of the word "identify" as set forth in paragraph
iv of the Definitions section of these
interrogatories.

A.4.    The defendant objects to Interrogatory No. 4 in
that it is overly broad, vague, and unduly
burdensome.  The defendant further objects in
that it seeks information protected by the Self
Critical Analysis privilege, the attorney work-
product doctrine, and information obtained in
anticipation of litigation.

Without waiving its objections, the defendant
has produced a copy of the vessel's Deck Log for
the date of the incident and the Report of
Personal Injury relating to the plaintiff.  The
defendant also has within its possession a copy
of the vessel's Drill Log for the date of the
incident.

The defendant also has within its possession the
U.S. Coast Guard's Report of Investigation into
the Circumstances Surrounding the Incident
Involving ISLANDER - RESCUE BOAT
CAPSIZED/PERSONAL INJURY on 08/04/03, which was
obtained in anticipation of litigation and is
also protected by the attorney work-product
doctrine.  The defendant also has within its
possession a Near Miss Report prepared by
Captain Gregory Gifford, which is protected by
the Self Critical Analysis privilege.

Q.5.    Identify all officers, members of the crew, and
passengers of the Defendant's vessel at the time
of the alleged incident, also including within

your answer, the capacity in which each officer,
crew member or passenger was aboard the vessel
(i.e. Captain, Mate, Cook, passenger, etc.), and
whether the individual witnessed the alleged
incidents.

In responding to this interrogatory please use
the definition of the word "identify" as set
forth in paragraph iii of the <u>Definitions</u>
section of these interrogatories.

A.5.    In its Automatic Disclosure, the defendant has
produced a copy of a Daily Report of Crew
Members on Watch dated August 4, 2003 for the
M/V ISLANDER, which identifies the crewmembers
that were onboard the vessel at that time.  The
defendant has also provided the contact
information for those crewmembers in its
Automatic Disclosure.  Additionally, the
defendant does not maintain a passenger list
and, as a result, cannot identify all the
passengers that were onboard.  However, it is
the defendant's understanding that Albert
Doucette, Farley Doucette, Michael Armstrong and
Douglas Ulwich were passengers onboard and that
they witnessed the incident or a portion
thereof.  The contact information for these
passengers is also provided in defendant's
Automatic Disclosure.

Q.6.    Please itemize all payments of maintenance &
cure benefits, if the Defendant, to, or on
behalf of, the Plaintiff, setting forth the date
of each payment, the amount of each payment, and
to whom each payment was made.

A.6.    Plaintiff was paid maintenance on August 15,
2003 ($490.00), September 24, 2003 ($980.00),
November 18, 2003 ($1,470.00), April 1, 2004
($5,460.00), May 7, 2004 ($1,400.00), July 9,
2004 ($2,870.00), September 3, 2004 ($1,085.00),
November 19, 2004 ($3,185.00), March 24, 2005
($4,235.00), and June 6, 2005 ($2,135.00).

The following cure payments were made by the
defendant: May 17, 2004 to Falmouth Walk-In
Medical Clinic ($281.00); July 26, 2004 to

Stephen Beaton ($1,907.60); November 1, 2004 to Stephen Beaton ($513.60); February 7, 2005 to Richard Tomb, M.D. ($586.09); May 31, 2005 to Stephen Beaton ($3,029.06), and; September 20, 2005 to Stephen Beaton ($1,213.80).

Q.7.    If the Defendant has not provided maintenance & cure benefits, if the Defendant has delayed provision of maintenance & cure benefits for more than thirty days after a request for benefits was made, or if the Defendant has discontinued such provision of maintenance & cure benefits, please state the basis upon which the Defendant relies for its failure to provide maintenance & cure, its delay in providing maintenance & cure and/or its discontinuance of the said maintenance and cure benefits.

A.7.    Not applicable, as the defendant has fully and timely satisfied its maintenance and cure obligation.

Q.8.    If Defendant was not present at the time of the alleged incident, please state:

    a.    whether Defendant had notice or knowledge of said alleged incidents; and

    b.    when, where, in what manner and from whom such notice or knowledge of the alleged incidents was received or acquired.

A.8.    In respect to subparts (a) and (b), the defendant objects to Interrogatory No. 8 in that it is vague and fails to identify with specificity the "incidents" inquired about.  To the extent that the inquiry addresses the capsizing, see answers to interrogatory Nos. 3 and 5 herein.

Q.9.    Identify all communications, statements and/or admissions made by the Plaintiff to anyone concerning (1) the alleged incident; (2) the injuries alleged in plaintiff's complaint; and/or (3) the damages alleged in plaintiff's complaint.  Please include within your answer:

a.  the date said communication was made;

b.  the name and address of the person to whom said communication was made;

c.  where said communication was made;

d.  the name and address of each person present at the time said communication was made;

e.  the precise contents of the communication;

f.  if said communication was written, recorded, or transcribed, please state the present location of said writing or transcription.

A.9.    In respect to subparts (a) through (f), the defendant objects to Interrogatory No. 9 in that it seeks information obtained in anticipation of litigation or protected by the attorney work-product doctrine. Without waiving its objection, the defendant does not have any statements made by the plaintiff at the present time.

Q.10.   Identify all written reports, recorded conversations, and/or statements (signed or unsigned), and all memoranda of statements, made by any person at any time, relating to: (1) alleged incident; (2) the cause of the alleged incident; (3) the Plaintiff's alleged injuries; and/or (4) the Plaintiff's alleged damages. In responding to this interrogatory please use the definition of the word "identify" set forth in paragraph iv of the Definitions section of these interrogatories.

A.10.   The defendant objects to Interrogatory No. 10 in that it seeks information obtained in anticipation of litigation, or protected by the attorney work-product doctrine. Without waiving its objection, the defendant has within its possession statements from William Munson, Michael Kuhn, Steven Bonoli, Ellen Ferguson, Frank Kincaid, John Mendes, John Lobo, Roy Smith, Thomas Henrique, Bernard Holzer, Farley

Doucetee, Michael Armstrong, and Douglas Ulwick.
The contact information for these individuals
was provided in defendant's Automatic
Disclosure.

Q.11.     Identify all photographs, video tapes, ships
          plans, and/or blueprints of the vessels named in
          Plaintiff's Complaint, which were made, drawn,
          taken and/or developed within the past 10 years.

A.11.     The defendant objects to Interrogatory No. 11 in
          that it is overly broad, vague, unduly
          burdensome, and not likely to lead to the
          discovery of admissible evidence.

Q.12.     List each occasion (during the time period
          commencing five years prior to the date of
          Plaintiff's alleged incident and extending
          through to the present), that the vessels named
          within Plaintiff's complaint was inspected
          and/or surveyed by any person other than:  A)
          the Defendant; B) a master or member of the crew
          of the vessel.  Please include within your
          answer the date in which the vessel was
          inspected and/or surveyed and identify the
          person, surveyor or company who performed said
          inspection and/or survey.

A.12.     The defendant objects to Interrogatory No. 11 in
          that it is overly broad, vague, unduly
          burdensome, and not likely to lead to the
          discovery of admissible evidence.

Q.13.     If, with respect to the alleged incident or the
          Plaintiff's alleged injuries and damages, the
          Defendant claims that the Plaintiff was: A)
          contributorily negligent; B) failed to exercise
          reasonable care for his own safety; C) breached
          a duty of care owed to himself and/or others; or
          D) or failed to mitigate his damages, then
          please state the basis of each such claim.

A.13.     The defendant submits that discovery is ongoing
          and that no depositions have been obtained.  The
          defendant will supplement this response, as
          requested, as discovery progresses.

Q.14. State the basis of the affirmative defense(s) raised in Defendant's Answer to Plaintiff's Complaint.

A.14. The defendant objects to Interrogatory No. 14 in that it is overly broad, vague, unduly burdensome, and seeks the disclosure of the mental impressions, conclusions, opinions, and legal theories of defense counsel.

Q.15. Please identify each person who was a witness to the events immediately preceding, during, and/or immediately after the alleged incident. In responding to this interrogatory please use the definition of the word "identify" set forth in paragraph iii of the Definitions section of these interrogatories.

A.15. The defendant submits that discovery is ongoing. The defendant responds upon present information that the passengers identified in Answers to interrogatories Nos. 5 and 23 herein witnessed the incident or a portion thereof. Additionally, the vessel's officers and the crewmembers of its Deck Department may have witnessed the events immediately preceding, during, or after the incident. Moreover, the defendant understands that members of the U.S. Coast Guard that were onboard the vessel may also have witnessed the incident or a portion thereof.

Q.16. Please state the names, addresses and expected testimony of each expert witness who the Defendant may call at trial, including in your answer:

  a. the subject matter on which the expert is expected to testify;

  b. the education, training and/or experience that qualifies said expert witness as an expert on the subject matter;

  c. the specific opinions and/or facts to be expressed by the expert;

d.    a complete summary of the grounds for each
      opinion to be expressed at trial;

e.    identify all documents relied upon by the
      expert in forming his or her opinions;

f.    set forth all facts relied upon by the
      expert when forming his opinions.

A.16.    In respect to subparts (a) through (f), the
         defendant objects to Interrogatory No. 16 in
         that it seeks information beyond the scope of
         permissible discovery under Rule 26 of the
         Federal Rules of Civil Procedure.  Without
         waiving its objection, the defendant has not
         made a determination concerning the experts it
         intends to call at trial.  If the defendant
         intends to call an expert witness, then it will
         supplement this response but will only disclose
         the information required under the Federal Rules
         of Civil Procedure.

Q.17.    If the Defendant claims that it is entitled to
         limit its liability pursuant to 46 U.S.C. 183,
         please state:

a.    the value of the vessel at the conclusion
      of the voyage upon which the alleged
      incident occurred;

b.    the value of the freight then pending on
      vessel at the conclusion of the voyage upon
      which the alleged incident occurred;

c.    the basis for the above valuations.

A.17.    In respect to subparts (a) through (c), the
         defendant, at this time, does not intend to
         claim Limitation of Liability as a defense.  The
         defendant will supplement this response, if
         limitation of liability becomes an issue as
         discovery progresses.

Q.18.    Please describe all maintenance (other than
         routine maintenance procedures performed on the
         vessel each and every trip), repairs,
         alterations, modifications and/or subsequent

remedial measures performed on, or to, the vessel, her equipment and appurtenances, during period of time beginning two (2) years prior to the alleged incident and extending one (1) year following the alleged incident, including within your answer:

a.   the date the maintenance, repair, alteration, modification, and/or subsequent remedial measure was performed;

b.   the specific location on the vessel and/or the specific piece of equipment or appurtenances upon which the maintenance, repair, alteration, modification and or subsequent remedial measure was performed;

c.   the identity of the person who performed said maintenance, repairs, alterations, modifications, and/or subsequent remedial measures;

d.   the nature of the work performed.

A.18.   In respect to subparts (a) through (d), the defendant objects to Interrogatory No. 18 in that it is overly broad, vague, unduly burdensome, and not likely to lead to the discovery of admissible evidence.

Q.19.   Identify all protection and indemnity (P&I) policies, policies of insurance, excess insurance policies, re-insurance policies and/or indemnity agreements, under which any person may be liable to make payments or indemnify any other person, as a result of the claims asserted in the above captioned Civil Action, or as a result of Judgment entered in the above captioned Civil Action, stating for each:

a.   the type of policy or agreement;

b.   the insurer;

c.   The insured;

d.   the limits of coverage;

e.   the dates in which the policy is or was in effect.

A.19.   In respect to subparts (a) through (e), the defendant's vessel is insured with International Marine Underwriters, a Member of OneBeacon America Insurance Company.  The defendant has requested a copy of its policy and will produce it upon receipt.

Q.20.   Please identify all orders and/or standing orders that were to be followed by the crew on the date of the alleged incident during the drill.

A.20.   The defendant objects to Interrogatory No. 20 in that it is overly broad and vague, and does not define the phrase "standing orders."  Without waiving its objection, the defendant submits upon its understanding that there were no "standing orders" concerning the man-overboard drill.

Q.21.   Please identify all manuals, handbooks and documents regarding procedures, operations, regulations, policies, rules, safety, training, protocol, drills and/or standing orders that were on the M/V ISLANDER at the time of the alleged incident to the present.

A.21.   The defendant objects to Interrogatory No. 21 in that it is overly broad, vague, unduly burdensome, and not likely to lead to the discovery of admissible evidence.

Q.22.   Identify any and all complaints, reprimands, suspensions, hearings held against the Captain Dandridge.

A.22.   The defendant objects to Interrogatory No. 22 in that it seeks information not likely to lead to the discovery of admissible evidence.  The defendant further objects because it seeks information protected by the Self Critical Analysis privilege.  Without waiving its objection, the defendant submits any action by

13

the U.S. Coast Guard is a matter of public record and equally available to plaintiff's counsel.

Q.23.    Identify the names and address of any and all passengers on M/V ISLANDER on the day of the alleged incident.

A.23.    The defendant does not maintain a list of passengers and therefore is unable to respond to this interrogatory.  Nevertheless, the defendant understands that Albert Doucette, Farley Doucette, Michael Armstrong, and Douglas Ulwich were passengers onboard and that they witnessed the incident or a portion thereof.  The contact information for these passengers is provided in defendant's Automatic Disclosure.

Q.24.    Identify the individual who was supervising the man overboard, life boat drill on the date of the alleged incident.

A.24.    Captain David Dandridge had overall responsibility for supervising the man-overboard drill on the date of the incident.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS** 21st **DAY OF NOVEMBER 2005.**

**WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY**

By:   Philip J. Parent

Its:

14

**OBJECTIONS BY:**

*[signature]*

Thomas J. Muzyka
BBO NO. 365540
Kenneth M. Chiarello
BBO NO. 639274
CLINTON & MUZYKA, P.C
One Washington Mall
Suite 1400
Boston, MA  02108
(617) 723-9165

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by hand, mail, overnight mail, facsimile on ___4/21/05___

*[signature]*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

BARRY BROOKS,                                    CIVIL ACTION
    Plaintiff,                               NO: 05-11861-RGS

VS.


WOODS HOLE, MARTHA'S VINEYARD
AND NANTUCKET STEAMSHIP
AUTHORITY,
    Defendant.


## DEFENDANT'S ANSWERS TO PLAINTIFF'S INTERROGATORIES

Now comes the defendant, Woods Hole, Martha's Vineyard & Nantucket Steamship Authority, in the above-entitled action, by and through its undersigned counsel, Clinton & Muzyka, P.C., and submits herewith its Answers to Plaintiff's Interrogatories as follows:

### GENERAL OBJECTION

The defendant objects to all of the plaintiff's Interrogatories insofar as they seek discovery of matters which constitute privileged communications or materials prepared in the anticipation of litigation or trial. By furnishing an answer to any Interrogatory, the defendant does not waive any of its general or specific objections to that or any other Interrogatory. The defendant further

2

objects because the plaintiff's Interrogatories, including

their subparts, exceed the amount allowed under the Local

Rules for the U.S. District Court for the District of

Massachusetts, and the Federal Rules of Civil Procedure.

**INTERROGATORIES**

Q.1.      Please respond to the applicable question below:

        a.    If the Defendant is a natural person, please state the Defendants full name, residential address and business address.

        b.    If the Defendant is a publicly traded corporation, please state the exact corporate name, the state of incorporation, the Defendant corporation's address; and identify all officers, directors and any parent or subsidiary corporations.

        c.    If the Defendant is a privately held corporation which is not publicly traded, please state the exact corporate name, the state of incorporation, the Defendant corporation's address; and identify all officers, directors, and shareholders of the Defendant corporation and any parent or subsidiary corporations.

        d.    If the Defendant is a partnership (including limited partnerships and limited liability partnerships), please state the exact partnership name, the business address of the partnership and the full name and residential address of each partner.

        e.    If the Defendant is not a natural person, a corporation or a partnership, please describe the type of entity the Defendant is, and identify all executive officers of the Defendant's organization.

A.1.      Subparts (a) through (d) are not applicable.  In
          response to subpart (e), the defendant is a body
          politic.  The defendant objects to the remaining
          information sought in subpart (e) in that it is
          not likely to lead to the discovery of
          admissible evidence.

Q.2.      With respect to the vessels named in the
          Plaintiff's Complaint, please identify, as of
          the date of the alleged incident:

          a.    the owner of said vessel;

          b.    the operator of said vessel;

          c.    the controller of said vessel;

          d.    the charterer (if any) of said vessel.

A.2.      In respect to subparts (a) through (d), the
          defendant owned, operated, and controlled the
          M/V ISLANDER on the day of the incident.  The
          vessel was not chartered at that time.

Q.3.      Based upon information the Defendant has
          acquired either directly or through
          communications with its agents, employees,
          investigators, adjusters, legal representative,
          the Plaintiff, and/or any other person, please
          describe in detail the Defendant's understanding
          of how the alleged incident occurred, setting
          forth the date, location, time, weather
          conditions, sequence of events, and the cause
          (or causes) of said incident.

A.3.      The defendant objects to Interrogatory No. 3 in
          that it is overly broad, unduly burdensome, and
          seeks information obtained in anticipation of
          litigation or protected by the attorney work-
          product doctrine.  Without waiving its
          objection, the defendant responds that during a
          U.S. Coast Guard man-overboard drill the rescue
          boat that the plaintiff was in capsized causing
          him to fall into the water.  The vessel was in
          Vineyard Haven Harbor at the time of the
          incident, which occurred at approximately 0945
          hours on August 4, 2003.  The weather conditions

were seasonal.  The defendant is still
investigating the incident and the cause of the
incident.  This is an issue to be determined by
the fact-finder.

Q.4.　　Identify all log entries, Coast Guard reports,
accident reports, injury reports, captain's
reports, reports of crew members, investigative
reports or any other communications, writings or
reports concerning the alleged incident, stating
for each, whether said report or writing was
prepared in anticipation of litigation as
defined by Fed.R.Civ.P.26(B)(3).  In responding
to this interrogatory please use the definition
of the word "identify" as set forth in paragraph
iv of the <u>Definitions</u> section of these
interrogatories.

A.4.　　The defendant objects to Interrogatory No. 4 in
that it is overly broad, vague, and unduly
burdensome.  The defendant further objects in
that it seeks information protected by the Self
Critical Analysis privilege, the attorney work-
product doctrine, and information obtained in
anticipation of litigation.

Without waiving its objections, the defendant
has produced a copy of the vessel's Deck Log for
the date of the incident and the Report of
Personal Injury relating to the plaintiff.  The
defendant also has within its possession a copy
of the vessel's Drill Log for the date of the
incident.

The defendant also has within its possession the
U.S. Coast Guard's Report of Investigation into
the Circumstances Surrounding the Incident
Involving ISLANDER – RESCUE BOAT
CAPSIZED/PERSONAL INJURY on 08/04/03, which was
obtained in anticipation of litigation and is
also protected by the attorney work-product
doctrine.  The defendant also has within its
possession a Near Miss Report prepared by
Captain Gregory Gifford, which is protected by
the Self Critical Analysis privilege.

Q.5.    Identify all officers, members of the crew, and passengers of the Defendant's vessel at the time of the alleged incident, also including within your answer, the capacity in which each officer, crew member or passenger was aboard the vessel (i.e. Captain, Mate, Cook, passenger, etc.), and whether the individual witnessed the alleged incidents.

In responding to this interrogatory please use the definition of the word "identify" as set forth in paragraph iii of the <u>Definitions</u> section of these interrogatories.

A.5.    In its Automatic Disclosure, the defendant has produced a copy of a Daily Report of Crew Members on Watch dated August 4, 2003 for the M/V ISLANDER, which identifies the crewmembers that were onboard the vessel at that time.  The defendant has also provided the contact information for those crewmembers in its Automatic Disclosure.  Additionally, the defendant does not maintain a passenger list and, as a result, cannot identify all the passengers that were onboard.  However, it is the defendant's understanding that Albert Doucette, Farley Doucette, Michael Armstrong and Douglas Ulwich were passengers onboard and that they witnessed the incident or a portion thereof.  The contact information for these passengers is also provided in defendant's Automatic Disclosure.

Q.6.    Please itemize all payments of maintenance & cure benefits, if the Defendant, to, or on behalf of, the Plaintiff, setting forth the date of each payment, the amount of each payment, and to whom each payment was made.

A.6.    Plaintiff was paid maintenance on August 15, 2003 ($490.00),August 27, 2003 ($490.00), September 24, 200 ($980.00), October 17, 2003 ($735.00), November 14, 2003 ($980.00), December 8, 2003 ($980.00), January 9, 2004 ($980.00), February 23, 2004 ($1,680.00), March 11, 2004 ($700.00), March 26, 2004 ($735.00), April 30,

6

2004 ($980.00), June 4, 2004 ($980.00), June 25,
2004 (735.00), August 26, 2004 ($2,310.00),
October 7, 2004 ($1,050.00), December 14, 2004
($2,660.00), February 7, 2005 ($1,645.00), March
24, 2005 ($3,115.00), June 6, 2005 (1,085.00),
and October 26, 2005 ($5,355.00).

On October 16, 2003, the defendant provided cure
payments to Martha's Vineyard Hospital
($3,234.50) and Rhode Island Hospital
($1,709.82).  On October 17, 2003, cure payments
were made Working RX ($485.40) and Rhode Island
Medical Imaging ($410.00).

On December 22, 2003, cure payments were made to
Working RX ($776.71), Jack Darbyshire
($1,735.74), University Cardiology Foundation
($40.00), Falmouth Hospital ($4,561.83), Bay
Radiology Association ($121.05), and Cape Cod
Pathology ($59.00).

A cure payment was made to Rhode Island Hospital
($7,747.08) on February 3, 2004.

On May 17, 2004 the following cure payments were
made: Jack Darbyshire ($751.14), Mir Shuttari,
M.D. ($776.00), Town of Tisbury ($300.00), Oak
Bluffs Ambulance ($200.00), Warwick Rescue
Service ($310.50), University Medical Foundation
($208.80), University Emergency Medical
Foundation ($139.20), and Working RX ($378.19).
On June 7, 2004, cure payments were made to
Massachusetts General Physicians Organization
($151.17), Falmouth Hospital ($51.18), and Cape
Cod Hospital ($314.14).

Cure payments were made to Working RX on June
15, 2004 ($403.68), July 26, 2004 ($1,734.45),
and September 13, 2004 ($2,174.43).

On October 12, 2004, a cure payment was made to
Robert Flaherty, M.D. ($600.00).  On October 26,
2004, the following cure payments were made:
Falmouth Hospital ($339.84), Bay Radiology
Associates ($11.60), The Cardiovascular
Specialist ($74.81), Mir Shuttari, M.D.
($83.86), Cape Cod ENT Specialist ($303.17),

Working RX ($1,082.96), and Abraham Dietz, M.C. ($267.28).

Cure payments were made to Cape Cod Hospital ($575.64) and Jack Darbyshire ($2,587.26) on November 1, 2004, and Working RX ($927.27) on November 11, 2004.

On January 7, 2005, the following cure payments were made: Working RX ($2,018.33), Denmarks, Inc. ($89.00), Thomas Irvine ($37.29), Robert Flaherty, M.D. ($2.29), David Herec, M.D. ($91.20), Michael Barnett, M.D. ($35.07), Cape Cod ENT Specialist ($55.97), and Cape Cod Hospital ($608.09). On January 10, 2005, cure payments were made to Falmouth Hospital ($422.82 & $94.73).

On March 31, 2005, cure payments to Cape Cod ENT Specialist ($94.65) and Robert Flaherty, M.D. ($55.97) were made.

On May 6, 2005, a cure payment to Robert Flaherty, M.D. ($75.00) was made. The following cure payments were made on May 31, 2005: Jack Darbyshire ($3,337.95), Falmouth Hospital ($457.04), Robert Flaherty, M.D. ($55.97), The Cardiovascular Specialist ($76.22), Cape Cod Hospital ($170.50), Mir Shuttari, M.D. ($349.81), and Working RX ($4,895.97).

On June 8, 2005, cure payments were made to Jack Darbyshire ($101.15) and Working RX ($215.12). On June 9, 2005 and June 14, 2005, cure payments were made to Jack Darbyshire ($101.15 & 101.15) was made.

On July 5, 2005, a cure payment was made to Jack Darbyshire ($101.15). On July 12, 2005, a cure payment was made to Working RX ($1,518.88). On July 26, 2005 cure payments were made to Cape Cod Hospital ($107.93), Cape Cod ENT Specialist ($55.97), Medical Affiliates of Cape Cod ($142.67), and Jack Darbyshire ($101.15).

On August 4, 2005, cure payments were made to Jack Darbyshire ($505.75) and Working RX

($700.80).  Cure payments were also made to Jack
Darbyshire ($101.15) and Working RX ($86.91) on
August 10, 2005.  On August 24, 2005, cure
payments were made to Medical Affiliates of Cape
Cod ($87.24) and Jack Darbyshire ($303.45).

On October 11, 2005 and October 12, 2005, cure
payments were made to Jack Darbyshire ($202.30)
and David Herec, M.D. ($124.33) respectively.

Finally, cure payments were provided directly to
the plaintiff for prescription reimbursements on
September 24, 2003 ($11.18) and October 17, 2004
($241.50).

Q.7.    If the Defendant has not provided maintenance &
cure benefits, if the Defendant has delayed
provision of maintenance & cure benefits for
more than thirty days after a request for
benefits was made, or if the Defendant has
discontinued such provision of maintenance &
cure benefits, please state the basis upon which
the Defendant relies for its failure to provide
maintenance & cure, its delay in providing
maintenance & cure and/or its discontinuance of
the said maintenance and cure benefits.

A.7.    Not applicable, as the defendant has fully and
timely satisfied its maintenance and cure
obligation.

Q.8.    If Defendant was not present at the time of the
alleged incident, please state:

        a.    whether Defendant had notice or knowledge
              of said alleged incidents; and

        b.    when, where, in what manner and from whom
              such notice or knowledge of the alleged
              incidents was received or acquired.

A.8.    In respect to subparts (a) and (b), the
defendant objects to Interrogatory No. 8 in that
it is vague and fails to identify with
specificity the "incidents" inquired about.  To
the extent that the inquiry addresses the

capsizing, see answers to interrogatory Nos. 3 and 5 herein.

Q.9.    Identify all communications, statements and/or admissions made by the Plaintiff to anyone concerning (1) the alleged incident; (2) the injuries alleged in plaintiff's complaint; and/or (3) the damages alleged in plaintiff's complaint.  Please include within your answer:

    a.    the date said communication was made;

    b.    the name and address of the person to whom said communication was made;

    c.    where said communication was made;

    d.    the name and address of each person present at the time said communication was made;

    e.    the precise contents of the communication;

    f.    if said communication was written, recorded, or transcribed, please state the present location of said writing or transcription.

A.9.    In respect to subparts (a) through (f), the defendant objects to Interrogatory No. 9 in that it seeks information obtained in anticipation of litigation or protected by the attorney work-product doctrine.  Without waiving its objection, the defendant does not have any statements made by the plaintiff at the present time.

Q.10.    Identify all written reports, recorded conversations, and/or statements (signed or unsigned), and all memoranda of statements, made by any person at any time, relating to: (1) alleged incident; (2) the cause of the alleged incident; (3) the Plaintiff's alleged injuries; and/or (4) the Plaintiff's alleged damages.  In responding to this interrogatory please use the definition of the word "identify" set forth in paragraph iv of the Definitions section of these interrogatories.

A.10.    The defendant objects to Interrogatory No. 10 in
that it seeks information obtained in
anticipation of litigation, or protected by the
attorney work-product doctrine.  Without waiving
its objection, the defendant has within its
possession statements from William Munson,
Michael Kuhn, Steven Bonoli, Ellen Ferguson,
Frank Kincaid, John Mendes, John Lobo, Roy
Smith, Thomas Henrique, Bernard Holzer, Farley
Doucetee, Michael Armstrong, and Douglas Ulwick.
The contact information for these individuals
was provided in defendant's Automatic
Disclosure.

Q.11.    Identify all photographs, video tapes, ships
plans, and/or blueprints of the vessels named in
Plaintiff's Complaint, which were made, drawn,
taken and/or developed within the past 10 years.

A.11.    The defendant objects to Interrogatory No. 11 in
that it is overly broad, vague, unduly
burdensome, and not likely to lead to the
discovery of admissible evidence.

Q.12.    List each occasion (during the time period
commencing five years prior to the date of
Plaintiff's alleged incident and extending
through to the present), that the vessels named
within Plaintiff's complaint was inspected
and/or surveyed by any person other than:  A)
the Defendant; B) a master or member of the crew
of the vessel.  Please include within your
answer the date in which the vessel was
inspected and/or surveyed and identify the
person, surveyor or company who performed said
inspection and/or survey.

A.12.    The defendant objects to Interrogatory No. 11 in
that it is overly broad, vague, unduly
burdensome, and not likely to lead to the
discovery of admissible evidence.

Q.13.    If, with respect to the alleged incident or the
Plaintiff's alleged injuries and damages, the
Defendant claims that the Plaintiff was: A)
contributorily negligent; B) failed to exercise

11

reasonable care for his own safety; C) breached a duty of care owed to himself and/or others; or D) or failed to mitigate his damages, then please state the basis of each such claim.

A.13.    The defendant submits that discovery is ongoing and that no depositions have been obtained. The defendant will supplement this response, as requested, as discovery progresses.

Q.14.    State the basis of the affirmative defense(s) raised in Defendant's Answer to Plaintiff's Complaint.

A.14.    The defendant objects to Interrogatory No. 14 in that it is overly broad, vague, unduly burdensome, and seeks the disclosure of the mental impressions, conclusions, opinions, and legal theories of defense counsel.

Q.15.    Please identify each person who was a witness to the events immediately preceding, during, and/or immediately after the alleged incident.
In responding to this interrogatory please use the definition of the word "identify" set forth in paragraph iii of the Definitions section of these interrogatories.

A.15.    The defendant submits that discovery is ongoing. The defendant responds upon present information that the passengers identified in Answers to interrogatories Nos. 5 and 23 herein witnessed the incident or a portion thereof. Additionally, the vessel's officers and the crewmembers of its Deck Department may have witnessed the events immediately preceding, during, or after the incident. Moreover, the defendant understands that members of the U.S. Coast Guard that were onboard the vessel may also have witnessed the incident or a portion thereof.

Q.16.    Please state the names, addresses and expected testimony of each expert witness who the Defendant may call at trial, including in your answer:

12

    a.   the subject matter on which the expert is expected to testify;

    b.   the education, training and/or experience that qualifies said expert witness as an expert on the subject matter;

    c.   the specific opinions and/or facts to be expressed by the expert;

    d.   a complete summary of the grounds for each opinion to be expressed at trial;

    e.   identify all documents relied upon by the expert in forming his or her opinions;

    f.   set forth all facts relied upon by the expert when forming his opinions.

**A.16.**    In respect to subparts (a) through (f), the defendant objects to Interrogatory No. 16 in that it seeks information beyond the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure. Without waiving its objection, the defendant has not made a determination concerning the experts it intends to call at trial. If the defendant intends to call an expert witness, then it will supplement this response but will only disclose the information required under the Federal Rules of Civil Procedure.

**Q.17.**    If the Defendant claims that it is entitled to limit its liability pursuant to 46 U.S.C. 183, please state:

    a.   the value of the vessel at the conclusion of the voyage upon which the alleged incident occurred;

    b.   the value of the freight then pending on vessel at the conclusion of the voyage upon which the alleged incident occurred;

    c.   the basis for the above valuations.

13

A.17.     In respect to subparts (a) through (c), the
          defendant, at this time, does not intend to
          claim Limitation of Liability as a defense.  The
          defendant will supplement this response, if
          limitation of liability becomes an issue as
          discovery progresses.

Q.18.     Please describe all maintenance (other than
          routine maintenance procedures performed on the
          vessel each and every trip), repairs,
          alterations, modifications and/or subsequent
          remedial measures performed on, or to, the
          vessel, her equipment and appurtenances, during
          period of time beginning two (2) years prior to
          the alleged incident and extending one (1) year
          following the alleged incident, including within
          your answer:

          a.    the date the maintenance, repair,
                alteration, modification, and/or subsequent
                remedial measure was performed;

          b.    the specific location on the vessel and/or
                the specific piece of equipment or
                appurtenances upon which the maintenance,
                repair, alteration, modification and or
                subsequent remedial measure was performed;

          c.    the identity of the person who performed
                said maintenance, repairs, alterations,
                modifications, and/or subsequent remedial
                measures;

          d.    the nature of the work performed.

A.18.     In respect to subparts (a) through (d), the
          defendant objects to Interrogatory No. 18 in
          that it is overly broad, vague, unduly
          burdensome, and not likely to lead to the
          discovery of admissible evidence.

Q.19.     Identify all protection and indemnity (P&I)
          policies, policies of insurance, excess
          insurance policies, re-insurance policies and/or
          indemnity agreements, under which any person may
          be liable to make payments or indemnify any
          other person, as a result of the claims asserted

14

in the above captioned Civil Action, or as a result of Judgment entered in the above captioned Civil Action, stating for each:

a.    the type of policy or agreement;

b.    the insurer;

c.    The insured;

d.    the limits of coverage;

e.    the dates in which the policy is or was in effect.

A.19.    In respect to subparts (a) through (e), the defendant's vessel is insured with International Marine Underwriters, a Member of OneBeacon America Insurance Company.  The defendant has requested a copy of its policy and will produce it upon receipt.

Q.20.    Please identify all orders and/or standing orders that were to be followed by the crew on the date of the alleged incident during the drill.

A.20.    The defendant objects to Interrogatory No. 20 in that it is overly broad and vague, and does not define the phrase "standing orders."  Without waiving its objection, the defendant submits upon its understanding that there were no "standing orders" concerning the man-overboard drill.

Q.21.    Please identify all manuals, handbooks and documents regarding procedures, operations, regulations, policies, rules, safety, training, protocol, drills and/or standing orders that were on the M/V ISLANDER at the time of the alleged incident to the present.

A.21.    The defendant objects to Interrogatory No. 21 in that it is overly broad, vague, unduly burdensome, and not likely to lead to the discovery of admissible evidence.

15

Q.22.    Identify any and all complaints, reprimands, suspensions, hearings held against the Captain Dandridge.

A.22.    The defendant objects to Interrogatory No. 22 in that it seeks information not likely to lead to the discovery of admissible evidence.  The defendant further objects because it seeks information protected by the Self Critical Analysis privilege.  Without waiving its objection, the defendant submits any action by the U.S. Coast Guard is a matter of public record and equally available to plaintiff's counsel.

Q.23.    Identify the names and address of any and all passengers on M/V ISLANDER on the day of the alleged incident.

A.23.    The defendant does not maintain a list of passengers and therefore is unable to respond to this interrogatory.  Nevertheless, the defendant understands that Albert Doucette, Farley Doucette, Michael Armstrong, and Douglas Ulwich were passengers onboard and that they witnessed the incident or a portion thereof.  The contact information for these passengers is provided in defendant's Automatic Disclosure.

Q.24.    Identify the individual who was supervising the man overboard, life boat drill on the date of the alleged incident.

A.24.    Captain David Dandridge had overall responsibility for supervising the man-overboard drill on the date of the incident.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 21st DAY OF NOVEMBER, 2005.

16

WOODS HOLE, MARTHA'S
VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY

By:    Philip J. Parent
Its:

**OBJECTIONS BY:**

Thomas J. Muzyka
BBO NO. 365540
Kenneth M. Chiarello
BBO NO. 639274
CLINTON & MUZYKA, P.C
One Washington Mall
Suite 1400
Boston, MA  02108
(617) 723-9165

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above
document was served upon the attorney of record
for each party by: hand, mail, overnight mail,
facsimile, on 7/[21]-95