UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY BROOKS,<br>    Plaintiff<br><br>V.<br><br>WOODS HOLE, MARTHA'S<br>VINEYARD AND NANTUCKET<br>STEAMSHIP AUTHORITY,<br>    Defendant | Civil Action<br><br>No. 05-11861-MLW |
| MARK LALIBERTE,<br>    Plaintiff<br><br>V.<br><br>WOODS HOLE, MARTHA'S<br>VINEYARD AND NANTUCKET<br>STEAMSHIP AUTHORITY,<br>    Defendant | Civil Action<br><br>No. 05-11224-MLW |

## AFFIDAVIT OF ATTORNEY DAVID ANDERSON REGARDING RULES OF PROFESSIONAL CONDUCT

I David F. Anderson do depose and state as follows:

At a settlement conference before the Court on August 9, 2007 the Court requested that I submit an affidavit explaining why I did not believe that the Rules of professional conduct required me to disclose to each of my clients in the above consolidated cases an aggregate settlement offer made by the Defendant. Further the Court requested that I submit an affidavit explaining why I believed that the rules of professional conduct allowed me to represent each of

the Plaintiff's in the above two cases.

1.      <u>Aggregate Offer</u>

Myself and my office where first hired by Mark Laliberte in the spring of 2005.   Soon thereafter suit was filed in Mr. Laliberte's case and it was assigned to Judge Wolf.  In the Summer of 2005 Mr. Brooks hired myself and this office to represent him in connection with his claim against the Steamship Authority.   Each client contacted this office completely independently.  In the fall of 2005 a separate suit was filed in the Brooks case.  Soon thereafter, the Defendant moved to consolidate the two cases for trial.  Plaintiff's opposed this motion on the grounds that these cases were largely assessments of damages and that consolidation would not save time arguing "there is a very good chance that liability will not be contested or if contested will be resolved through summary judgment motions".   This has subsequently proven to be true as we are now looking at trying one long case rather than two short ones.   Up until this point in time I had two separate cases, with two separate clients, and two separate Judges.  This Court granted Defendant's motion and consolidated the two cases for the purposes of trial.  Either while the Motion to Consolidate was pending or soon after it was granted I had a conversation with Mr. Brooks and separate conversation with Mr. Laliberte in which it was discussed and agreed by myself and both clients that each case would be evaluated and negotiated separately on its own merits and that we would not entertain any aggregate settlement offers.

From the fall of 2005 through the summer of 2007 no settlement offers where made on either case.   During the early summer of 2007 the Counsel for the Defendant indicated that his insurer was interested in discussing settlement and requested that I provide him a realistic

2

settlement demand for each of the above two cases. I spoke to each of the clients separately and received authority for separate settlement demands in each of the two cases and conveyed them to the Defendant during two separate telephone conversations. The Parties agreed to mediate the LaLiberte case before Judge Bowler.

At this point in time defense counsel advised me that his adjuster did not want to settle the Laliberte case unless the Brooks case settled. After several discussions myself and defense counsel agreed to set aside time prior to the scheduled LaLiberte mediation to try to reach an agreement in the Brooks case. Several days prior to the scheduled Laliberte mediation settlement negotiations in the Brooks case reached an impasse. Once it became clear that the Brooks case was not going to settle the Defendant indicated it was no longer willing to attend the mediation in the Laliberte case. Shortly thereafter Defendant forwarded to Plaintiff's counsel a letter in which the Defendant made an "aggregate offer" See Rule 1.8 of the Rules of Professional Conduct. to settle both the Brooks and Laliberte cases for a single undivided amount. All prior settlement offers and demands had been on an individualized basis.

In light of my prior discussions and agreement with Mr. Brooks and Mr. Laliberte an aggregate offer was simply not something that we would entertain or respond too. Further, based upon the magnitude of the aggregate offer as well as the context in which the aggregate offer was made, I came to the conclusion that this aggregate offer was not an attempt to resolve these cases, rather I concluded that it was an attempt to artificially create a conflict were no conflict had previously existed. Accordingly, I wrote to defense counsel stating "I am not going to entertain any aggregate offers in the Brooks and Laliberte cases". I subsequently informed both clients that an aggregate offer had been made, and informed both clients of my response.

Defendant made no further offers until the August 9, settlement conference and all subsequent settlement negotiations have been on an individualized basis.

During the course of the August 9, settlement conference I stated in substance that I did not even consider Defendant's aggregate settlement offer a legitimate offer and I didn't even have to tell my clients about it.   I believed then and continue to believe now that this is an accurate statement of the law.  Rule 1.4 of the Massachusetts Rules of professional conduct states that "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information".  Comment [1] states.  "A lawyer who receives from opposing counsel an offer of settlement in a civil controversy …. should promptly inform the client of its substance <u>unless prior discussions with the client have left it clear that the proposal will be unacceptable</u>".  (emphasis added).  Here, myself and my clients had discussed and agreed that we would not entertain any aggregate settlement offers.  In light of my prior discussions and agreements with Mr. Brooks and Mr. Laliberte not to entertain any aggregate offers as well as comment [1] to rule 1.4 I stand by my prior statement as a correct interpretation of the Massachusetts Rules of Professional Conduct as applied to the circumstances of these cases.   As noted previously, I none the less did advise Brooks and Laliberte that the Defendant made an aggregate settlement offer.

2. <u>Conflict of Interest</u>

The Court has requested that I set forth why I believe myself and this firm can represent both Brooks and Laliberte in this case.  My response is that I can ethically represent both clients because their interests in this case do not conflict.   The conflict of interest issue was specifically discussed with both Plaintiffs when the cases were consolidated in 2005 and generally discussed

when I was hired by Brooks during the summer of 2005. Given that Defendant has stipulated to liability in both cases under both negligence and unseaworthiness, that the Captain was cited for negligence and had his Captain's license suspended, that the Defendant Steamship Authority was cited by the Coast Guard and admitted to a violation of a USCG regulations and was fined, that both the Mate and Boson were cited by the Coast Guard, that the Coast Guard did not cite either Plaintiff or otherwise attribute any blame to either one, the Plaintiffs simply have no conflict of interests in this case. With respect to comparative negligence the Defendant alleges that Brooks failed to completely zip up his life vest and Laliberte failed to remind him too do so. Both Plaintiff's have a common interest in proving that there is no causal relationship between Brooks' failure to completely zip up his life vest and his subsequent drowning. With respect to damages there is a common insurance policy covering both claims, however the policy limits are roughly nine times the two Plaintiff's combined settlement demands and the Defendant is a large solvent entity. Accordingly it is not a situation involving a common limited fund preventing full recovery by both parties. Finally, as indicated above the Plaintiffs and counsel decided long ago not to entertain any aggregate settlement offers, which are allowed by the rules of Professional Conduct (See, Rule 1.8) but have a significant potential for conflicts of interest.

    As practical matter we have decided in consultation with both clients that if both cases go to trial my partner, Carolyn Latti, will assume primary responsibility for presenting and defending one Plaintiff's claim while I assume primary responsibility for presenting and defending the other Plaintiff's claim. However this decision was based upon practical and tactical consideration as well as the doubling of the workload in what are essentially two assessments of damages cases tried at the same time. This decision was made prior to the

settlement conference and in fact we started to assume these roles during the August 9,

settlement conference.

                                              Respectfully submitted,

                                              /s/ David F. Anderson_____
                                              David F. Anderson
                                              Latti & Anderson LLP
                                              30-31 Union Wharf
                                              Boston, MA 02109
                                              (617) 523-1000

Dated: 8/22/07

### CERTIFICATE OF SERVICE

     I hereby certify that on this date, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

                                              /s/ David F. Anderson
                                              David F. Anderson, Esq.
                                              Latti & Anderson LLP
                                              30-31 Union Wharf
                                              Boston, MA 02109
                                              617-523-1000

Dated: 8/22/07